11 CIV 0916

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Horne, Esq. (JH 7258)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED FEB 09 2011 U.S.D.C. S.D. N.Y. CASHIERS

| | |
|---|---|
| GARY MANDEL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br>vs.<br><br>CHINA MEDIAEXPRESS HOLDINGS, INC., AND ZHENG CHENG,<br><br>Defendants. | CASE No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff, Gary Mandel, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against China MediaExpress Holdings, Inc, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendant's public documents, conference calls and announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China MediaExpress Holdings, Inc., ("China MediaExpress", or the "Company"), securities analysts' reports and advisories about the Company, and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased common stock of China MediaExpress Holdings, Inc. during the period between November 8, 2010 and February 3, 2011, inclusively. Plaintiff seeks to recover damages caused by Defendants' violations of the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Throughout the Class Period, the Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company misrepresented the number of buses in its advertising network; (2) that the Company misrepresented the nature and extent of its business relationships; (3) that, as a result, the Company's financial results were overstated during the Class Period; and (4), as a result of the above, that the Company's statements concerning China MediaExpress's business, operations, and prospects were materially false and misleading at all relevant times.

## JURISDICTION AND VENUE

3.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

4.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

5.   Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

6.   In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the NASDAQ.

## PARTIES

7.   Plaintiff Gary Mandel, as set forth in the attached PSLRA certification, purchased China MediaExpress securities at artificially inflated prices during the Class Period and has been damaged thereby.

8.   Defendant China Media Express is a Delaware Corporation with its principal executive offices located at Room 2805, Central Plaza, Wanchai Hong Kong. China MediaExpress, through its operating subsidiaries, serves the People's Republic of China by providing television advertising network on inter-city express buses in China. At all relevant times herein, the Company's common stock was actively traded on the NASDAQ under ticker "CCME."

9.   Defendant Zheng Cheng ("Cheng" or the "Individual Defendant") was, at all relevant times, Chairman, Chief Executive Officer ("CEO") and President of CME.

10.   China MediaExpress and Cheng are collectively referred to herein as the "Defendants."

11.   Defendants' fraudulent scheme: (i) deceived the investing public regarding China MediaExpress's business, operations, management and the intrinsic value of China

MediaExpress common stock; and (ii) caused plaintiff and other members of the Class to purchase China MediaExpress securities at artificially inflated prices.

12. During the Class Period, the Individual Defendant and China MediaExpress and its subsidiaries and affiliates, were privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections. Because of possession of such information, the Defendants knew or recklessly disregarded the fact that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

13. Due to the accessibility to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents and via reports and other information provided in connection therewith.

14. Throughout the Class Period, the Defendants were able to control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. The Defendants had access to the documentation of filings alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, the Defendants are responsible for the accuracy of the public reports and press releases detailed herein, and are therefore primarily liable for the representations contained therein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased common stock of China MediaExpress during the Class Period and who were damaged thereby.

Excluded from the Class are the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by China MediaExpress or its transfer agent, and may be notified of the pendency of this action by mail using a form of notice customarily used in securities class actions.

17. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by Defendants acts as alleged herein;

(b) whether statements made by the Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of China MediaExpress; and

(c) to what extent the members of the Class have sustained damages, and the proper measure of damages.

20. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21. The Class Period begins on November 8, 2010 when the Company issued a press release announcing its third quarter 2010 financial results for the period ending September 30, 2010. With respect to China MediaExpress' press release regarding its results and operations, the press release stated in pertinent part as follows:

> Zheng Cheng CME's Founder and CEO, commented, "As expected, revenue and net income maintained very strong growth in the third quarter. The growth was primarily attributed to the power from our largest inter-city buses in China where our advertising time sold, average advertising rates, number of our advertising customers, and a greater proportion of direct sales to agency sales increased substantially compared to last year.
>
> "In addition, embedded advertising continued to generate a significant portion of our revenue as we have packaged and sold it separately to our clients since Q3 2009. The embedded advertising, which is displayed during the broadcasting of the content, has relatively low production cost, generates high margins and accounts for the approximately 23% of our revenue for the nine month ended September 30, 2010.

"Furthermore, our year-to-date results reflect the success of our airport express bus business. Since the first launch of this new business line at the beginning of 2010, the advertising packages sold for airport express busses have been at premium prices, because of the demographics of airport express bus travelers, exclusivity for all the buses from the airports and the unique captive environments. As a result, the expansion of this business has generated significant revenue and has produced higher gross margins overall. For the nine months ended September 30, 2010, the revenue generated from airport express buses was approximately $35.1 million, of which approximately $15.0 million was generated in the third quarter. Our network today covers six large and important airports in China: Beijing, Fuzhou, Guangzhou, Qingdao, Changsha and Chongqing."

Mr. Cheng continued, "We continue to grow our bus network through new contracts with bus operators in regions we already serve and by expanding into new regions in the highly fragmented niche market. Since the start of this year, we have grown our network by more than 4,000 express buses and have expanded into five new regions: Zhejiang, Hunan, Jianxi, Henan and Inner Mongolia. We have long-term contracts in place, ranging from three to eight years with 63 bus operators."

\* \* \*

Jacky Lam, CME's Chief Financial Officer stated "As of September 30, 2010, we had approximately $170 million in cash up from $139 million as of June 30, 2010. Cash generated from operating activities for the first nine months of 2010 was $69.0 million (of which $30.8 million was generated in the third quarter), compared to $29.9 million generated in the same period of 2009. Net cash used in investing activities during the current nine month period was $3.6 million. Our cash resources continue to be sufficient to meet both our short-term and long-term liquidity needs, capital expenditure requirements to achieve our expansion plans, including internal growth initiatives as well as potential acquisitions."

22. Following the issuance of the earnings release, representatives of China MediaExpress held a conference call to discuss the Company's earnings release and operations. During the call, the representatives made numerous positive statements about the Company's business and operations.

23. On December 9, 2010, China MediaExpress issued a press release announcing that Starr International Company, Inc. ("Starr International"), through its wholly-owned

7

subsidiary Starr Investments Cayman II, Inc. ("Starr Cayman"), had completed the exercise of 1.545,455 of China MediaExpress common stock purchase warrants, held since January 2010. According to the press release, the Company raised $10 million through the exercise of warrants.

24.     On December 16, 2010, China MediaExpress issued a press release issued that its Board of Directors has approved the implementation of a dividend policy. The press release stated in pertinent part as follows:

> CME's Founder & CEO, Zheng Cheng, commented, "Consistent with our commitment to continuously maximize value to our investors, our Board of Directors agreed that with the Company's exceptional balance sheet and solid free cash flow generation, it is time to recognize the ongoing support of our shareholders. With this payout ratio, we will continue to have the financial flexibility to invest in our high-return, high-growth projects."

25.     The Company's statements referenced in ¶19-22 regarding the Company's financial condition were materially false and misleading because, as Muddy Waters later reported, the Company's Chinese filings only reported $17 million in revenues in 2009; thus, the Company's claim that it earned $15 million in the third quarter alone is "outlandish". The claims are further false because they do not disclose (1) that the Company misrepresented the number of buses in its advertising network; (2) that the Company misrepresented the nature and extent of its business relationships; (3) that, as a result, the Company's financial results were overstated during the Class Period; and (4), as a result of the above, that the Company's statements concerning CME's business, operations, and prospects were materially false and misleading at all relevant times.

26. On January 30, 2011, Citron Research issued a report on China MediaExpress entitled "The China Reverse Merger stock that is 'Too Good to be True'". The report raised serious issues with the quality of the Company's earnings reports and operations.

27. In response to the report, on January 31, 2011, the price of China MediaExpress securities declined substantially, falling from $20.86 per share to $17.84 per share on extremely heavy trading volume.

28. Then, on February 3, 2011 Muddy Waters Research initiated coverage on China MediaExpress with a strong sell rating on China MediaExpress stock. In its report, Muddy Waters questioned the accuracy of many of the Company's statements and the quality of the Company's earnings.

29. In response to the report, the price of China MediaExpress securities declined substantially, falling from $16.61 per share to $11.09 per share on extremely heavy trading volume.

30. The market for China MediaExpress's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, China MediaExpress's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired China MediaExpress securities relying upon the integrity of the market price of China MediaExpress's securities and market information relating to China MediaExpress, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of China MediaExpress's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about China MediaExpress's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of China MediaExpress and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendant's materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

### Applicability of Presumption of Reliance: Fraud-on-the-Market Doctrine

33.     At all relevant times, the market for China MediaExpress common stock was an efficient market for the following reasons, among others:

(a) The Company's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, China MediaExpress filed periodic public reports with the SEC and the NASDAQ;

(c) China MediaExpress regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d) China MediaExpress was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

34. As a result of the foregoing, the market for the Company's common stock promptly digested current information regarding China MediaExpress from all publicly available sources and reflected such information in China MediaExpress' stock price. Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of China MediaExpress' common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

35. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many or all of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase China MediaExpress' securities at artificially inflated

prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

38. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for China MediaExpress' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

39. Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of China MediaExpress as specified herein.

39. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of China MediaExpress' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about China MediaExpress and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of China MediaExpress' securities during the Class Period.

40.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available. Such material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing China MediaExpress' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by overstatements and misstatements of the Company's financial condition throughout the Class Period, if the Defendants did not have actual knowledge of the misrepresentations and omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

41.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of China MediaExpress' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of China MediaExpress' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants, but not disclosed in public statements by the Defendants during the Class Period, Plaintiff and the other members of the Class acquired China MediaExpress common stock during the Class Period at artificially high prices, and were, or will be, damaged thereby.

42. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding China MediaExpress' financial results, which was not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their China MediaExpress securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

43. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of China MediaExpress' securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 9, 2011

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Horne, Esq. (JH7258)
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

Attorneys for Plaintiff

**Rosen, Laurence**

**From:** postmaster@rosenlegal.com
**Sent:** Thursday, February 03, 2011 4:57 PM
**To:** lr54321@gmail.com
**Subject:** Confirmation of Receipt of Certification

Dear Gary D Mandel,

We have received your certification in the China MediaExpress Holdings, Inc. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against China MediaExpress Holdings, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The China MediaExpress Holdings, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: Gary

Last name: Mandel

Address: ███████

City: ███████

State, Zip: ███████                     REDACTED

Email: ███████

Phone: ███████

The Plaintiff Certifies that:

1

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 09/03/2010
Number of shares: 1000
Price per Share: 9.55

Purchase Date(s): 11/12/2010
Number of shares: 300
Price per Share: 18.10

Purchase Date(s): 11/19/2010
Number of shares: 200
Price per Share: 16.69

Purchase Date(s): 11/19/2010
Number of shares: 200
Price per Share: 16.51

Purchase Date(s): 12/22/2010
Number of shares: 300
Price per Share: 15.77

Purchase Date(s): 02/01/2011
Number of shares: 200
Price per Share: 16.50

Purchase Date(s): 02/01/2011
Number of shares: 200
Price per Share: 17.50

Purchase Date(s): 02/01/2011
Number of shares: 200
Price per Share: 17.00

Purchase Date(s): 02/01/2011
Number of shares: 200
Price per Share: 16.50

Purchase Date(s): 02/03/2011
Number of shares: 500
Price per Share: 14.35


Shares Sold:

Sale Date(s): 02/03/2011
Number of shares: 3300
Price per Share: 12.00


7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:



I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the China MediaExpress Holdings, Inc. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act